**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

_____

PENNY McFARLAND                          )
                                         )
    Plaintiff,                           )
                                         )
                                         )
    v.                                   )    CIVIL ACTION NO. 3:06CV651
                                         )
                                         )
VIRGINIA RETIREMENT SERVICES             )
OF CHESTERFIELD, L.L.C. d/b/a            )
MAGNOLIAS OF CHESTERFIELD,               )
ET AL.                                   )
                                         )
    Defendants.                          )
_____   )


### MEMORANDUM OPINION

This matter is before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1)

on the Defendants' Partial Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure for failure to state a claim upon which relief can be granted (docket entry no.

14).  The Plaintiff, Penny McFarland, brings suit pursuant to, _inter alia_, the Fair Labor Standards

Act ("FLSA" or the "Act"), 29 U.S.C. § 201 _et seq_., alleging that the Defendants, Virginia

Retirement Services of Chesterfield, L.L.C. ("Magnolia"),[1] and some of its various owners and

directors,[2] failed and/or refused to pay McFarland certain regular and overtime wages due her

_____

[1] Virginia Retirement Systems of Chesterfield, L.L.C. does business as Magnolias of
Chesterfield.  As such, the primary Defendant will be referred to as "Magnolia."

[2] The individually named Defendants include Mary Dunmoyer (the Executive Director of
Magnolia), Robert Dunmoyer (the Administrator of Magnolia), and David H. Matthews
("Matthews"), Ben Stalker Reed ("Reed"), and Frances Wood Loughlin ("Loughlin"), the latter

under the Act.  (Am. Compl. ¶¶ 1, 3) (docket entry no. 2.)  McFarland also brings two pendent

state law claims: the first alleges wrongful discharge in violation of Virginia public policy (the

"Bowman claim"); the second is for wrongful retaliation/discharge pursuant to Va. Code Ann. §

40.1-51.2:2.  (Am. Compl. ¶¶ 43-52).  The matter has been extensively briefed and the Court has

entertained oral argument.  For the reasons set forth herein, the Defendants' Partial Motion to

Dismiss is GRANTED IN PART and DENIED IN PART.

## Material Facts

Because this case arises from a motion to dismiss, the facts as alleged in the Amended

Complaint must be taken as true and viewed in the light most favorable to Plaintiff, Penny

McFarland ("McFarland" or the "Plaintiff").  Chao v. Rivendell Woods, Inc., 415 F.3d 342, 346

(4th Cir. 2005).  Magnolia is a Virginia, for-profit retirement community, and it employed

McFarland as its Activities Director and Office Manager from May 2005 until the date of her

termination on July 1, 2006.  (Am. Compl. ¶¶ 17, 18.)  In these roles, McFarland was responsible

for coordinating and conducting activities for the residents of Magnolia, and was paid $15 per

hour for such efforts.  (Am. Compl. ¶ 18.)

McFarland's FLSA claim is based on Magnolia's alleged "hours shaving" and failure to

compensate her for time worked "off-the-clock."  See 29 U.S.C. § 207(a).  McFarland asserts

that her duties as the Activities Director required her to spend many hours "off the clock," that

the Defendants were aware or should have been aware that McFarland was performing such

---

three Defendants alleged to be owners of Magnolia.  (Am. Compl. ¶¶ 1, 9-14.)  The parties have
stipulated to the dismissal, without prejudice, of the claims against Defendant Matthews (docket
entry no. 35), as well as Defendant Loughlin (docket entry no. 37).  The portions of the
Defendants' Motion to Dismiss addressing the viability of McFarland's claims against Matthews
and Loughlin are therefore rendered moot.

work, that the Defendants accepted the benefits derived therefrom, and yet failed to compensate McFarland for her "regular and overtime hourly wages."  (Am. Compl. ¶¶ 19, 37.)  The specific instances of overtime work performed is not relevant to the Court's analysis of the pending Motion to Dismiss, but suffice it to say that McFarland claims she was not paid for any of these additional services.  (Am. Compl. ¶¶ 20-27.)

McFarland brings her second cause of action for wrongful termination in violation of Virginia public policy.  She alleges that she was terminated for participating in a state investigation of a safety complaint levied against Magnolia.  (Am. Compl. ¶ 30.)  The facts supporting the wrongful termination charge are pled as follows:

> On or around June 22, 2006, [Effie] Stovall[3] instructed the staff to take the residents outside for a walk.  It was around 95 degrees outside.  Someone made a complaint out of concern for the residents.  An inspector from the [state] licensing board called Magnolia and spoke to [McFarland] about the complaint.  [McFarland] felt she had to comply with the investigation and answered the investigator's questions truthfully.  [McFarland] immediately informed Stovall of the phone call.  On or around June 29, 2006, after a telephone call with the inspector, [Defendant] Mary Dunmoyer told Stovall to terminate [McFarland].  Mary Dunmoyer stated that because the walk was an "activity," [McFarland] should be terminated, even though Stovall informed Mary Dunmoyer that it was indeed Stovall who had given the instruction for the walk.  Mary Dunmoyer stated that by speaking to the inspector, [McFarland] was trying to "sabotage" Magnolia and should be terminated immediately.  Initially, Stovall refused to terminate [McFarland], but complied after Mary Dunmoyer threatened to terminate her [(Stovall)] as well.
>
> [McFarland] was terminated on July 1, 2006 and filed for unemployment compensation.

(Am. Compl. ¶¶ 31-33.)  In essence, McFarland alleges that she was terminated because she

---

[3] Stovall was McFarland's supervisor and was responsible for payroll hours and reporting. (Am. Compl. ¶ 28.)  She is not a named defendant in the present case.

provided information regarding the health and safety of Magnolia's residents in response to the

State investigator's inquiry.  Such action, McFarland contends, violates Virginia's strong public

policy favoring the liberal reporting of suspicion of abuse, neglect, or exploitation of aged adults,

see Va. Code Ann. § 63.2-1606, and, more specifically, the State's public policy prohibiting the

retaliation against an employee of an assisted living facility who provides information to, or

otherwise cooperates with, the appropriate State authorities regarding residents at such facilities,

see id. § 63.2-1730.

    After the Virginia Employment Commission determined that McFarland qualified for

unemployment benefits (Am. Compl. ¶ 33), McFarland filed a safety and health complaint with

the Virginia Department of Labor and Industry on August 28, 2006.  See Va. Code Ann. § 40.1-

51.2:2(A) (an employee who has been discharged for filing a safety or health complaint may file

a complaint with Commissioner within 60 days of the alleged violation).  Nonetheless, the

Commissioner refused to issue a charge against the Defendants.  Hence, McFarland brings her

third cause of action under Va. Code Ann. § 40.1-51.2:2(B) (if the Commissioner refuses to issue

a charge against the allegedly discriminating/discharging employer, the employee may bring an

action in state court for appropriate relief), which she believes vests her "with a right to report

safety and health violations, and to bring an action for appropriate relief should her employer

discharge her or otherwise discriminate against her for exercising a right under the

Labor/Employment/Safety code."  (Am. Compl. ¶ 51.)

    The Defendants have moved for partial dismissal of McFarland's lawsuit pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Count II (wrongful discharge

in violation of public policy) and Count III (retaliation/discrimination for filing a safety or health

complaint) of the Amended Complaint fail to set forth sufficient factual allegations upon which relief can be granted.  (Defs.' Partial Mot. Dismiss) (docket entry no. 14.)

## Standard of Review

Pursuant to Rule 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  After accepting the facts as alleged in the Amended Complaint as true and viewing them in the light most favorable to Plaintiff McFarland, see Chao, 415 F.3d at 346, this Court should not grant the Defendants' Rule 12(b)(6) motion "unless. . .it appears certain that [McFarland] cannot prove any set of facts in support of [her] claim entitling [her] to relief." Id.  (citation omitted).  Stated differently, a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).

## Analysis

### 1.  Virginia Law Applies to McFarland's Pendent State Claims

When a pendent state law claim is presented to a federal court in conjunction with a federal question claim, a federal court has supplemental jurisdiction to hear the pendent state law claim if it "form[s] part of the same case or controversy" as the federal claim.  See 28 U.S.C. § 1367(a).  Here, McFarland's state claims plainly arise from the same "case or controversy" as her federal FSLA claim, for both the FSLA claim and the state claims arise from the same set of facts, and it would be unreasonable to require that McFarland pursue her claims in two separate judicial proceedings.  See White v. County of Newberry, 985 F.2d 168, 171 (4th Cir. 1993) (district court may exercise supplemental jurisdiction over claims that "the plaintiff would

ordinarily be expected to try. . .in one judicial proceeding."). When deciding state law claims

under supplemental jurisdiction, federal courts apply the choice-of-law rules of the jurisdiction in

which they sit. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). This Court

sits in Virginia, and since Virginia applies the doctrine of *lex loci delicti* to tort claims, "the law

of the place of the wrong governs all matters related to the basis of the right of action." Dreher v.

Budget Rent-A-Car Sys., Inc., 634 S.E.2d 324, 327 (Va. 2006) (citations omitted). Hence,

Virginia law will govern the resolution of McFarland's state law claims.

## 2. McFarland Has Pleaded a Valid *Bowman* Claim

Count II of the Amended Complaint alleges that McFarland was wrongfully discharged in

violation of public policy. Essentially, McFarland alleges that she was fired because she

answered a state investigator's questions truthfully regarding the "activity" of taking some of

Magnolia's residents on an outside excursion in 95 degree weather. See Am. Compl. ¶¶ 31-33.

Specifically, McFarland claims that Defendant Mary Dunmoyer, the Executive Director of

Magnolia, told McFarland's supervisor that "by speaking to the [State] inspector, [McFarland]

was trying to 'sabotage' Magnolia and should be terminated immediately." (Am. Compl. ¶ 32.)

Since there is no contract establishing that Magnolia hired McFarland for a definite

period or pursuant to specific terms, the Court must presume that McFarland was an at-will

employee, meaning that Magnolia could terminate her for any reason upon reasonable notice.

See County of Giles v. Wines, 546 S.E.2d 721, 723 (Va. 2001) (citations omitted). However,

Virginia recognizes an exception to the doctrine of employment at-will "based on an employer's

violation of public policy in the discharge of an employee." Rowan v. Tractor Supply Co., 559

S.E.2d 709, 710 (Va. 2002) (citing the seminal Virginia case establishing the exception, Bowman

v. State Bank of Keysville, 331 S.E.2d 797 (Va. 1985)).  A lawsuit brought under this exception is known as a "Bowman claim."

The narrow exception recognized in Bowman is limited "to discharges which violate *public* policy, that is, the policy underlying existing laws designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general."  Miller v. SEVAMP, Inc., 362 S.E.2d 915, 918 (Va. 1987) (emphasis in original).  The Supreme Court of Virginia has recognized at least three circumstances where a Bowman claim can be maintained: (1) where an employer violated a policy enabling the exercise of an employee's statutorily created right; (2) where the public policy violated by the employer was explicitly expressed in the statute (*e.g.*, "It is the public policy of the Commonwealth of Virginia that. . ."), and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy; or (3) where the discharge was based on the employee's refusal to engage in a criminal act.  See Rowan, 559 S.E.2d at 711 (internal citations omitted).  McFarland claims that the facts as pled in the Amended Complaint satisfy each of the three exceptions as noted.

As an initial matter, an employee plaintiff attempting to assert a wrongful discharge claim in violation of public policy must "identify [a] Virginia statute establishing a public policy" that was violated by the employer.  Lawrence Chrysler Plymouth Corp. v. Brooks, 465 S.E.2d 806, 809 (Va. 1996).  "While virtually every statute expresses a public policy of some sort, [the Supreme Court of Virginia] continue[s] to consider" the Bowman exception to be "narrow" because "termination of an employee in violation of the policy underlying any one statute does not automatically give rise to a common law cause of action for wrongful discharge."  Rowan, 559 S.E.2d at 711 (internal brackets omitted) (quoting City of Virginia Beach v. Harris, 523

S.E.2d 239, 245 (Va. 2000)).

      I.      *Did Magnolia Violate a Policy Enabling the Exercise of McFarland's Statutorily Created Right?*

In <u>Bowman</u>, several employees were fired because they refused to vote shares of stock in the manner directed by their employer. Former Va. Code § 13.1-32 (currently codified in Code § 13.1-662) gave shareholders the right to vote their shares. Obviously, to fully realize the public policy underlying the shareholders' statutory right, shareholders had to be allowed to vote such shares free from duress or intimidation. Thus, the Supreme Court of Virginia concluded that "[b]ecause the right conferred by statute is in furtherance of established public policy, the employer may not lawfully use the threat of discharge of an at-will employee as a device to control the otherwise unfettered discretion of a shareholder to vote freely his or her stock in the corporation." 331 S.E.2d at 801. Similarly, it would violate Virginia public policy for an assisted living facility employer to terminate an employee who reports truthful information regarding the health and safety of residents at the employer's facility, especially when the employee is statutorily obligated to report suspected abuse of such residents, because the statutory rights conferred on these employees furthers the well-established public policy endorsing the protection, care, and well-being of Virginia's aged adults.

Virginia law requires certain professionals to report instances of abuse, neglect or exploitation of aged or incapacitated adults:

      A.  Matters giving reason to suspect the abuse, neglect or exploitation of adults shall be reported immediately upon the reporting person's determination that there is such reason to suspect. . . .  Reports shall be made to the local department or the adult protective services hotline in accordance with the requirements of this section by the following persons acting in their professional capacity:

5.      Any person employed by. . .a public or private. . .facility and working with adults in an administrative, supportive or direct care capacity; [and]

6.      Any person providing full, intermittent or occasional care to an adult for compensation, including but not limited to, companion, chore, homemaker, and personal care workers.

. . . .

Va. Code Ann. § 63.2-1606(A)(5) and (6).  Importantly, "[a]ll persons required to report suspected adult abuse, neglect or exploitation *shall* cooperate with the investigating adult protective services worker of a local department and *shall* make information, records and reports which are relevant to the investigation available to such worker to the extent permitted by state and federal law."  Id. § 63.2-1606(B) (emphasis added).  And, "[a]n employer of a mandated reporter shall not prohibit a mandated reporter from reporting directly to the local department . . . ."  Id. § 63.2-1606(F).

It is clear that McFarland is a "mandated reporter" under the facts alleged in the Amended Complaint because she worked at "a private facility and work[ed] with adults in an administrative, supportive or direct care capacity," and/or because she provided "intermittent or occasional care to an adult for compensation."  Id. § 63.2-1606(A)(5), (6).  McFarland alleges that the contact from the State Board led her to suspect abuse of aged adults, and, therefore, Virginia law required her to truthfully report these suspicions to the Board and to cooperate in any subsequent investigation.  (Am. Compl. ¶¶ 31-33.)  Indeed, Virginia law does require professionals like McFarland to report such activity, and the public policy of Virginia encourages

-9-

everyday citizens to report the same if they be so advised.  The Amended Complaint alleges that

the Defendants terminated McFarland for reporting and providing information to the investigator,

an act that, under Virginia law, McFarland was required to perform.  <u>See</u> Va. Code Ann. § 63.2-

1606(B).  Thus, McFarland concludes that the Defendants' actions violated the public policy

supporting McFarland's right (or more precisely, her obligation) as a mandated reporter to

provide information regarding the incidents of abuse of aged adults to the State Board.  As such,

in firing McFarland, Magnolia attempted to punish her for exercising a statutorily created right

and, more importantly, it disregarded Virginia's public policy supporting the reporting of abused

persons to the appropriate state agency.

    The Defendants argue that McFarland's claim does not satisfy the first <u>Rowan</u> scenario

because "McFarland has not alleged that she was ever *prohibited* from reporting any matters that

she believed to be the abuse, neglect, or exploitation of adults." (Defs.' Mem. Supp. Partial Mot.

Dismiss at 4) (emphasis added) (docket entry no. 15.)  McFarland, on the other hand, asserts that

she is not required to allege that the Defendants prohibited her from fulfilling her statutorily

created rights, but rather only that the Defendants' actions violated the policy underlying her

statutorily created rights.  (Pl.'s Mem. Opp'n at 9) (docket entry no. 21.)

    The Defendants misconstrue the requirements for pleading a cause of action under the

first <u>Rowan</u> exception to the at-will employment doctrine.  Although the shareholders in

<u>Bowman</u> were prevented from voting their shares as they wished, the Supreme Court of Virginia

has never held that to satisfy the first <u>Bowman</u> exception, an employee must show that he was, in

fact, prohibited from exercising a statutory right.  To the contrary, the <u>Rowan</u> Court noted that

the employee must prove that the employer *violated a policy* enabling the exercise of an

-10-

employee's statutorily created right, Rowan, 559 S.E.2d at 711, not that the employer must actually prevent the employee from exercising the statutorily created right.

Here, McFarland alleges that the Defendants violated Virginia's public policy mandating the reporting of suspected abuse or neglect of elderly residents at an assisted living facility by those having responsibility for the care of those residents.  In response to an inquiry about suspected abuse or neglect by a state investigator, McFarland reported what she knew of the incident, and now alleges that she was fired for doing so.  "All persons required to report suspected adult abuse, neglect or exploitation," as was the case with McFarland, "*shall* cooperate with the investigating adult protective services worker of a local department and *shall* make information, records and reports which are relevant to the investigation available to such worker to the extent permitted by state and federal law."  Va. Code Ann. § 63.2-1606(B) (emphasis added).  And, "[a]n employer of a mandated reporter shall not prohibit a mandated reporter from reporting directly to the local department."  Id. § 63.2-1606(F).  If an at-will employee of an assisted living facility could be terminated for responding to and providing information to a state agency regarding the suspected abuse or neglect of aged adults, the statutes cited herein would be rendered meaningless.  The rights and protections conferred on employees such as McFarland are precisely designed to further Virginia's public policy seeking to ensure the health and well-being of the State's aged populace.  Indeed, if persons such as McFarland feared losing their jobs for providing truthful information regarding the health and safety of these individuals, fewer incidents of abuse and neglect would be reported, and the public policy endorsing the same ultimately defeated.  Thus, McFarland's Amended Complaint satisfies the first Rowan exception to the employment at-will doctrine.  See Bleich v. Forence Crittenton Servs. of Baltimore, Inc.,

632 A.2d 463, 471 (Md. Ct. Spec. App. 1993) (plaintiff stated cause of action for wrongful discharge in violation of public policy when she alleged she was fired for sending a letter that she suspected child abuse and neglect where such reporting was required by Maryland law); Hirsovescu v. Shangri-La Corp., 831 P.2d 73, 75 (Or. Ct. App. 1992) (plaintiff who asserted he was discharged because he made "good faith" reports of "potential physical abuse" to patients in a residential care center set forth a cause of action for wrongful discharge); Witt v. Forest Hosp., Inc., 450 N.E.2d 811, 813 (Ill. App. Ct. 1983) (nurse who alleged she was fired for providing information to State guardianship and advocacy commission stated cause of action for wrongful discharge).

> II. *Did Magnolia Violate a Public Policy Explicitly Expressed in a Statute and was McFarland Clearly a Member of that Class of Persons Directly Entitled to the Protection Enunciated by that Public Policy?*

To satisfy the second Rowan exception to the at-will employment doctrine, McFarland must allege that Magnolia violated a public policy explicitly expressed in a Virginia statute, and that McFarland was clearly a member of that class of persons directly entitled to the protection enunciated by that public policy.  See Rowan, 559 S.E.2d at 711.  With regard to the particular statute a plaintiff claims to "explicitly" express a public policy (*i.e.*, "It is the policy of the Commonwealth that. . ."), the Supreme Court of Virginia has held that the statute itself need not be so explicit to justify a wrongful termination claim in every case.  "Laws that do not expressly state a public policy, but were enacted to protect the property rights, personal freedoms, health, safety, or welfare of the general public, may support a wrongful discharge claim if they further an underlying, established public policy that is violated by the discharge from employment." Mitchem v. Counts, 523 S.E.2d 246, 251 (Va. 2000) (citations omitted).  That said, the Virginia

Code makes it a violation to retaliate against any person who engages in certain protected

conduct:

> No assisted living facility. . .may retaliate or discriminate in any manner
> against any person who (i) in good faith complains *or provides*
> *information to, or otherwise cooperates with, the Department or any*
> *other agency of government*. . .having responsibility for protecting the
> rights of residents of assisted living facilities. . .[or] (ii) attempts to assert
> any right protected by state or federal law. . . .

Va. Code Ann. § 63.2-1730 (emphasis added).  Additionally,

> No assisted living facility. . .may retaliate in any manner against any
> person who in good faith reports adult. . .abuse or neglect pursuant to. .
> .Article 2 (§ 63.2-1603 et seq.) of Chapter 16 of this title.

Id. § 63.2-1731.  McFarland's Amended Complaint satisfies the second Rowan exception to the

employment at-will doctrine.  The statutes are designed to protect persons in McFarland's

position who "blow their whistle" on an assisted living facility, and she falls into the class of

individuals covered by the statutes' provisions.  In fact, Sections 63.2-1730 and 1731, as well as

the provisions contained in Section 63.2-1606, discussed *supra*, are all designed to afford

protection to employees like McFarland who are employed at assisted living facilities, who report

suspected abuse or provide information to the State Board regarding such abuse, but yet are fired

as a result (*i.e.*, retaliated against) by the facility for performing their required duties.  These

statutes, taken as a whole, convey the Commonwealth's public policy favoring the protection of

aged adults and the persons who are responsible for their well-being and comfort.  Therefore, as

pled, the Defendants' retaliatory termination of the McFarland violated Virginia's public policy

prohibiting the retaliation or discrimination against a person who, in good faith, provides

information to an agency having responsibility for protecting the rights of residents of assisted

living facilities.  McFarland was clearly a member of that class of persons directly entitled to the protection articulated by the statute and, thus, McFarland's <u>Bowman</u> claim survives under the second recognized exception to the at-will employment doctrine.[4]

### 3.  Retaliation/Discrimination Under Va. Code Ann. § 40.1-51.2:1

In Count III, McFarland argues that Va. Code Ann. § 40.1-51.2:1 vests her "with a right to report safety and health violations, and to bring an action for appropriate relief should her employer discharge her or otherwise discriminate against her for exercising a right under the Labor/Employment/Safety code."  (Am. Compl. ¶ 51.)  According to McFarland, the "Defendants required their staff to perform walks in weather of 95 degrees, and are prohibited for [*sic*] terminating [McFarland] for speaking with the state licensing board about this incident.  Defendants' obligation to provide *its employees* with a safe workplace environment pursuant to" Section 40.1-51.2:1 "should also be extended to Defendants' customers, *the residents*."  (<u>Id.</u>) (emphasis added).  As noted below, such a construction stretches the statute beyond its

---

[4] At the same time, the Amended Complaint fails to satisfy the third <u>Rowan</u> exception – that McFarland was discharged based on her refusal to engage in a criminal act.  <u>Rowan</u>, 559 S.E.2d at 711.  Va. Code Ann. § 63.2-1606(G) imposes criminal liability on those persons 14 years of age or older who make or cause to be made a report of adult abuse, neglect, or exploitation *that he knows to be false*."  <u>Id.</u> § 63.2-1606(G) (emphasis added).  As the Defendants emphasize, "Nothing in the Complaint suggests that McFarland was asked or required *not* to report any suspicion of abuse, neglect, or exploitation of adults or that her termination was based on McFarland's refusal to engage in a criminal act."  (Defs.' Mem. at 6) (emphasis added).  Indeed, it is not alleged that anyone on behalf of Magnolia told McFarland to lie to the State investigator, and it is not alleged that anyone told McFarland she could not or should not report the suspected abuse, or that she should refuse to respond to the State investigator's inquiries.  Therefore, as McFarland makes no claim that she was asked to break the law, she cannot satisfy the third <u>Rowan</u> exception.  See <u>Mitchem</u>, 523 S.E.2d at 252 (trial court did not err in dismissing plaintiff employee's claim that she was wrongfully discharged in violation of the public policy embodied in the statute establishing the crime of simple assault as a Class 1 misdemeanor because the employee "did not allege that her employer discharged her for refusing to commit this crime.").

permissible reach.

Section 40.1-51.2:1, commonly known as Virginia's whistleblower statute, provides:

> No person shall discharge or in any way discriminate against an employee because the employee has filed a safety or health complaint. . .or otherwise acted to exercise rights under the safety and health provisions of this title for themselves or others.

Va. Code Ann. § 40.1-51.2:1.

McFarland's claim under this Section is once again predicated on her discussion with the inspector from the state licensing board. In her view, she "engaged in conduct that exercised her rights under the safety and health provisions, as she spoke to [the Department] regarding the unsafe conditions endured by Defendants' elderly residents." (Pl.'s Mem. Opp'n at 13.) By doing so, she contends that she "acted to exercise rights under the safety and health provision of this title for. . .others." Va. Code Ann. § 40.1-51.2:1. But the Defendants argue that McFarland's cooperation with the licensing inspector is not a proper basis for seeking the protection of Section 40.1-51.2:1. (Defs.' Mem. at 6.) This is so, they contend, because Title 40.1, Chapter 3, Article 5 of the Code governs safety provisions as they relate to the protection of *employees*. (Id. at 7.) They maintain that the General Assembly intended the statute to apply to situations in which employees *alone* are in danger of unsafe work hazards, *i.e.*, OSHA violations and the like. (Id.) Thus, any complaint McFarland may have had regarding the care of *residents* was entirely independent of the safety of her workplace. (Id. at 8.)

The Court cannot reasonably hold that Section 40.1-51.2:1 was intended to address the situation McFarland alleges to have taken place, and the Court concludes that the statute's application should not be extended in such a way. Indeed, Article 5 outlines various provisions

relating to the duties of *employers*, <u>see</u> Section 40.1-51.1(A) (requiring *employers* to furnish *employees* with a safe place of employment free from recognized hazards likely to cause death or serious physical harm *to its employees*), as well as the rights and duties of *employees*, <u>see</u> Section 40.1-51.2.  And, most importantly, the General Assembly explicitly established that Title 40.1 is "intended to provide *solely* for safety, health, and welfare *of employees and the benefits thereof shall not run to any other person*. . . ." Va. Code Ann. § 40.1-3 (emphasis added).  Thus, Section 40.1-51.2:1 is designed to ensure the safety and health of employees and no one else.  To read the statute otherwise would create a general whistleblower protection for reporting virtually anything that happens to any individual in the workplace.  Thus, McFarland's claim pursuant to Section 40.1-51.2:1 must be dismissed with prejudice.

**4.  Are the Defendants Proper Parties to McFarland's State Claim for Wrongful Discharge in Violation of Public Poliy?**

Finally, the individual Defendants contend that no individual liability may be imposed against them with regard to McFarland's common law wrongful discharge claim because they were never McFarland's employer; rather Magnolia was the employer.  (Defs.' Mem. at 11.)

The Virginia Limited Liability Company Act, Va. Code Ann. § 13.1-1000 *et seq.*, addresses the issue.  Defendant Virginia Retirement Services of Chesterfield, L.L.C. operates as Magnolias of Chesterfield and, as a Virginia limited liability company ("LLC"), it is "an independent entity which can sue and be sued and its members are not personally liable for the debt or actions of the company."  <u>Hagan v. Adams Prop. Assocs., Inc.</u>, 482 S.E.2d 805, 807 (Va. 1997); <u>see also</u> <u>Gowin v. Granite Depot, L.L.C.</u>, 634 S.E.2d 714, 719 (Va. 2006) ("A limited liability company is an entity that, like a corporation, shields its members from personal liability

based on actions of the entity.") (citations omitted).  Indeed, "no member, manager, organizer or other agent of a limited liability company shall have any personal obligation for any liabilities of a limited liability company, whether such liabilities arise in contract, tort or otherwise, *solely* by reason of being a member, manager, organizer or agent of a limited liability company."  Id. § 13.1-1019 (emphasis added).  Furthermore, "[a] member of a limited liability company is not a proper party to a proceeding. . .against a limited liability company, except where," *inter alia*, "(i) the object is to enforce a member's. . .liability to the limited liability company. . . ."  Id. § 13.1-1020.[5]  Since Defendant Magnolia is a limited liability company, its members, managers, and agents can have no "personal obligation for any liabilities of" Magnolia "*solely*" by virtue of their positions as members, managers, or agents of the LLC, even when such liability arises from a tort.  Id. § 13.1-1019.

It is clear from the face of the Amended Complaint that the only member, manager, or agent of Magnolia alleged to have personally participated in or contributed to McFarland's alleged wrongful termination is Mary Dunmoyer, the Executive Director of Magnolia.  (Am. Compl. ¶¶ 31-32.)  With the exception of Ms. Dunmoyer, the Amended Complaint does not allege that any of the remaining individual Defendants personally participated in or otherwise

---

[5] A "member" is "a person that has been admitted to membership in a [LLC]. . .and that has not ceased to be a member," Va. Code Ann. § 13.1-1002, and a "manager" is "a person . . . designated by the members of a [LLC] to manage the [LLC] as provided in the articles of organization or an operating agreement," id.  Construing the facts alleged in the Amended Complaint in the light most favorable to McFarland, see Chao, 415 F.3d at 346, those individual Defendants asserted to be owners of Magnolia (*i.e.*, Matthews, Reed, and Loughlin) will be considered "members" of the LLC, while the remaining individual Defendants (*i.e.*, Mary Dunmoyer and Robert Dunmoyer) will be treated as "managers" or "agents" of the LLC for purposes of analyzing their statuses as proper parties to Counts II and III of the Amended Complaint.

directed Magnolia's tortious conduct.  Indeed, the only specific reference to the individual

Defendants is their status as owners and/or managers of Magnolia.  (Am. Compl. ¶¶ 1, 9-14.)

Since a plaintiff's action for wrongful discharge sounds in tort, the individually named

Defendants (with the exception of Ms. Dunmoyer), whose existence in this case is predicated

solely on their status as members, managers, or agents of Magnolia, must be dismissed as parties

to McFarland's common law wrongful discharge claim.[6]  See Wash. County v. City of Bristol, 63

Va. Cir. 450, 454 (Va. Cir. Ct. 2003) (citing Section 13.1-1019 and holding that plaintiff's

allegation that defendant member was principal owner of a Virginia LLC was insufficient to state

a claim for holding that member individually liable).[7]

---

[6] The Court contemplated requiring the individual Defendants to remain as parties pending anticipated discovery and a possible motion for final dispositive relief by summary judgment because certain factual allegations are pled against the Defendants in the plural.  For example, the Amended Complaint states that McFarland "was terminated on July 1, 2006 and filed for unemployment compensation.  Defendants testified that [McFarland] was discharged for giving inaccurate information to the Director of Licensing and for providing information that did not concern [McFarland] or her job . . . ."  (Am. Compl. ¶ 33) (emphasis added.)  However, such after-the-fact allegations, at best, do not pertain to the relevant actions undertaken to initially terminate McFarland as there are regarding the Defendant Mary Dunmoyer, and the Court is otherwise obliged to render the appropriate relief of dismissal when sufficient grounds arise so as to excuse a party from further expense and effort.  At the same time, it is also appropriate to allow McFarland to conduct focused discovery on the issue of potential individual liability of additional parties and for leave to be granted to rejoin any party if the appropriate basis for such a claim can be fairly alleged consistent with the strictures of Fed. R. Civ. P. 11(b).  Although McFarland's counsel informally requested leave to amend at this juncture during a recent telephone conference with all counsel, the Court presumes that a sufficient basis is lacking at present to plead such additional allegations in good faith as required.  Accordingly, the motion to dismiss said parties will be without prejudice to allow such forthcoming amendment if a sufficient basis should develop.

[7] While Va. Code Ann. § 13.1-1020 allows a member of a LLC to be a proper party to a suit only when the object of the suit is (i) to enforce a member's right against or liability to the LLC or (ii) in the context of a derivative suit similar that provided for in Code § 13.1-1042, such limited exceptions appear inconsistent with Section 1019 as well as the relevant case law allowing for the imposition of liability on a member who personally engages in tortious conduct.

Such a conclusion furthers the statutory intent behind the Virginia Limited Liability Company Act which explicitly pronounces that a LLC is an independent entity designed to generally shield its members and managers from personal liability.  <u>See</u> Va. Code Ann. § 13.1-1019.  The conclusion also gives appropriate deference to those decisions from the Supreme Court of Virginia permitting a common law wrongful discharge claim to proceed against those officers or agents of a company who have played a key role in contributing to the company's tortious conduct allegedly inflicted on a wrongfully discharged plaintiff.  <u>See</u>, <u>e.g.</u>, <u>Bowman</u>, 331 S.E.2d at 798-801 (permitting employees' wrongful discharge lawsuit to proceed against both a Bank and seven individual members of the Bank's nine-person Board of Directors directly implicated in firing the employees, holding that the employees had "stated a cause of action in tort against the Bank *and the named directors* for improper discharge from employment.") (emphasis added);  <u>Lockhart v. Commonwealth Educ. Sys. Corp.</u>, 439 S.E.2d 328 (Va. 1994) (employee's wrongful discharge claim allowed to proceed against both corporate entity and individual supervisor who made decision to terminate employee and told her to "get out!").  Indeed, "[u]nder Virginia law, an officer or director of a corporation is liable only for those intentional torts he or she commits or authorizes on behalf of the corporation," <u>Airlines Reporting Corp. v. Pishvaian</u>, 155 F. Supp. 2d 659, 666 (E.D. Va. 2001) (citing <u>Sit-Set, A.G. v. Universal Jet Exch., Inc.</u>, 747 F.2d 921 (4th Cir. 1984) and <u>Miller v. Quarles</u>, 410 S.E.2d 639,

---

Indeed, it would be illogical to hold, on one hand, that a member may be liable for his or her own tortious conduct inflicted on a plaintiff, yet to also hold, on the other hand, that this same member would not be a proper party defendant in a lawsuit filed by the same injured plaintiff. Even so, Section 1020 is specifically limited to a *member's* party status in lawsuits involving LLCs, and therefore it does not alter the Court's determination as to whether managers or agents of a LLC – such as Ms. Dunmoyer may be proper party defendants in a wrongful discharge lawsuit.

641-42 (Va. 1991)), and there is no reason to believe that such a rule should not equally apply to LLC's because eventhough "a [LLC] is an entity that, like a corporation," is designed to "shield[] its members from personal liability based on actions of the entity," see Gowin, 634 S.E.2d at 719, a LLC member should still be held individually liable if he or she personally participates in a tort committed by the LLC or directs it to be done. See, e.g., Milk v. Total Pay & HR Solutions, Inc., 634 S.E.2d 208, 213 (Ga. Ct. App. 2006); see also Karin Schwindt, Comment, Limited Liability Companies: Issues in Member Liability, 44 UCLA L. Rev. 1541, 1548 (1997) ("If a member commits a tort while in the course of LLC business, she may be held personally liable for that tort. The LLC limited liability shield cannot protect her.") (internal footnotes omitted).[8]

The Court is keenly aware of Federal Rule of Civil Procedure 8(a)'s liberal notice pleading requirements, especially in the employment discrimination context, whereby a plaintiff's complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Indeed, the Supreme Court in Swierkiewicz held that there is not a heightened pleading standard for employment discrimination suits and that a plaintiff in such an action need not plead a prima facie case to withstand a motion to dismiss. 534 U.S. at 515. And, of course, at the motion to dismiss stage in the proceedings, the issue is not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. See id. at 511 (citation omitted). But the Fourth Circuit has not interpreted Swierkiewicz to relieve a plaintiff of the burden "to allege facts sufficient to state all the elements of her claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.),

---

[8] To the extent Lucker v. Cole Vision Corp., Civil Action No. 7:05CV00126, 2005 WL 1411655 (W.D. Va. June 16, 2005), is to the contrary, the Court respectfully disagrees with that court's analysis for the reasons set forth herein.

cert. denied, 540 U.S. 940 (2003).  In other words, "[w]hile a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff *is* required to allege facts that support a claim for relief."  Id. (emphasis in original).

It seems apparent to the Court that if a member, manager, or agent of a Virginia LLC cannot, as a matter of law, be liable in tort for actions of the LLC solely because that person is a member, manager, or agent of that LLC, see Va. Code Ann. § 13.1-1019, then a plaintiff should plead facts demonstrating a particular member's culpability in the LLC's tortious conduct that extends beyond that person's mere status as a member of the company.  McFarland has only made such allegations with respect to Defendant Mary Dunmoyer.  Therefore, the individual Defendants (with the exception of Mary Dunmoyer) are dismissed from Counts II and III of McFarland's Amended Complaint, with leave to amend should the discovery process produce evidence to the effect that the other individual Defendants played meaningful roles in the decision to terminate McFarland's employment.  Accordingly, Defendants Robert Dunmoyer and Ben Stalker Read must be dismissed as parties to Counts II and III of the Amended Complaint, but without prejudice for the reasons discussed, *supra*, in footnote six (n.6).

## Conclusion

For the reasons set forth herein, the Defendants' Motion to Dismiss is GRANTED IN PART, and DENIED IN PART.

An appropriate Order shall issue.

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Date: 3/6/07